UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANKENMUTH CREDIT UNION,

        Plaintiff,

v.

CHARLES FITZGERALD, et al.,

        Defendants.

_____/

Case No. 1:18-cv-12176
Honorable Thomas L. Ludington

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR JUDGMENT

This case was begun by a complaint filed in July of 2018 in the Saginaw County Circuit Court and removed to this Court within the same month. The docket currently reflects over 145 entries. Despite the amount of time that has passed and the number of pleadings filed, the underlying facts are not complex.

Plaintiff Frankenmuth Credit Union ("Frankenmuth") is in the business of extending credit, that is, making loans to consumers. Jones Pre-Owned Auto Sales ("Jones") is in the business of selling used vehicles to its customers. Frankenmuth agreed to finance Jones' sale of vehicles. Jones would assist its customers in completing credit applications and then submit those applications to Frankenmuth. If Frankenmuth approved the application, title to the vehicle would be transferred to the new owner, subject to a security interest in favor of Frankenmuth to secure repayment of the loan, and Jones would receive the loan proceeds. The primary subject of this case is five loans made by Frankenmuth but originated by Jones. The borrower, subject vehicle, and principal of each loan are as follows:

    Randall Anderson                    2016 Dodge           $44,695.00

| Rashaud Coleman | 2016 Dodge | $47,359.80 |
| Mark Ingram | 2015 Jeep | $53,100.00 |
| Charles Fitzgerald | 2015 Dodge | $32,000.00 |
| Austin Walker | 2008 Mercedes | $24,832.30 |

ECF Nos. 96-1; 96-2; 96-3; 96-4; 96-5. The borrowers, of course, did not pay their loans, necessitating this case. Upon investigation, Frankenmuth alleged that Jones acquired each of the vehicles from Xclusive Auto Group of Flint, Michigan ("Xclusive") and that the prices Jones sold the vehicles to the purchasers for "grossly exceeded the value of the damaged and inoperable vehicles." ECF No. 1-2 at PageID.19. When the borrowers did not pay their loans, Frankenmuth sued the borrowers, Jones and its principals, and Xclusive and its principal. Frankenmuth mitigated its losses by applying $5.00 from Borrower Defendants' savings accounts, receiving insurance payments, and in Defendant Walker's case, selling the subject vehicle. ECF Nos. 96-1; 96-2; 96-3; 96-4; 96-5.

Without repeating much of the history of the case, the following is a brief summary of the status of Plaintiff's claims against Defendants.

### I.

### A.

Defaults were entered against all five Borrower Defendants. ECF Nos. 25, 53, 55, 56, 90. A motion for default judgment was later granted against them for the unpaid balance of the loans. ECF No. 117. However, a judgment was neither tendered by Frankenmuth nor entered.

### B.

On January 21, 2020, Frankenmuth's Motion for Partial Summary Judgment was granted against Jones and its owners, Nicole and Vernell Phipps (referred to collectively as the "Retail

Defendants"), on Frankenmuth's claim for fraudulent misrepresentation. ECF No. 114. Defendants Phipps did not respond to Frankenmuth's Motion for Partial Summary Judgment. Retail Defendants did, however, file a crossclaim with their answer, alleging that they had been defrauded by Xclusive and its owner, Laron Thornton (the "Wholesale Defendants"), and by Borrower Defendants. ECF No. 3. Specifically, Retail Defendants alleged that their co-defendants violated 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1962 (RICO), and engaged in a civil conspiracy, undefined fraud, misrepresentation, and conversion. *Id.* Retail Defendants also admitted that they "never physically took possession of the motor vehicles" and "had no first hand knowledge of the condition of the vehicles being financed." ECF No. 3 at PageID.48–49.

In the Motion for Partial Summary Judgment, Frankenmuth argued that it would not have extended credit to Borrower Defendants had it known about the poor and misrepresented condition of the vehicles. Because Retail Defendants admitted they made positive assertions of fact about the condition of the vehicles without any knowledge of the truth of their assertions, Plaintiff's Motion for Partial Summary Judgment was granted. Subsequently, all other claims against the Phipps were voluntarily dismissed by Plaintiff. ECF Nos. 134, 137. A judgment was not entered against Retail Defendants because the amount of damages has remained unresolved.

## C.

Defaults have been entered against Xclusive Auto Group, LLC and Laron Thornton. ECF Nos. 27, 52. No summary judgment motion was filed.

## II.

Frankenmuth has now filed an omnibus motion seeking a judgment against Borrower Defendants, Wholesale Defendants, and Retail Defendants. ECF No. 145.

**A.**

Defaults against Borrower Defendants were docketed in October and November 2018.[1] ECF Nos. 25, 53, 55, 56. Frankenmuth's motion for default judgment against Borrower Defendants was filed on February 13, 2020. ECF No. 117. Each Borrower Defendant was determined to be liable to Plaintiff for the unpaid balance of their loan, including any outstanding principal and relevant interest. ECF No. 117. In the instant Motion for Judgment, Counsel seeks a judgment against Borrower Defendants. Despite the fact that a motion for judgment was previously granted against Borrower Defendants, a separate judgment was never entered because a conforming judgment was never tendered. Judgment will be now entered as to the Borrower Defendants.

**B.**

**i.**

Plaintiff's motion seeks a joint and several judgment against Wholesale Defendants for the Borrower Defendants' unpaid loans, plus treble damages under 18 U.S.C. § 1964(c). ECF No. 145-1 at PageID.599. In the Complaint, Plaintiff alleged that Wholesale Defendants were liable for fraudulent misrepresentation, participation in a civil conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. ECF No. 1. In the instant motion, Plaintiff concludes, without explanation, that Wholesale Defendants should be held joint and severally liable with Borrower Defendants. However, in previous supplemental briefing filed by Plaintiff, it argued,

> Retail Defendants are jointly and severally liable for the cost of the Borrower Defendant loans, to the extent those borrowers' unpaid loan balances are included in the actual damages incurred by the Plaintiff as a result of the fraudulent misrepresentations made by the Retail Defendants that gave rise to this lawsuit, the liability for which has already been established. Those unpaid loan balances are the

---

[1] Defendant Charles Fitzgerald's original default was vacated when he appeared in the lawsuit. ECF Nos. 54, 83. However, after he appeared, Defendant Fitzgerald did not continue to defend himself. A second default was later entered against him in October 2019. ECF No. 90.

> direct and proximate result of Retailer Defendants' fraudulent misrepresentations, and, as each of the defaulted Consumer Defendants participated in the same scheme giving rise to the same damages, to the extent those damages overlap, we submit that the obligation of the Retail Defendants and the Consumer Defendants (*as well as the Wholesale Defendants*) should be joint and several.

ECF No. 135 at PageID.557–58 (emphasis added).

A court may accept well-pleaded allegations from the complaint as sufficient to determine liability for a default judgment, but the allegations must be sufficient to establish liability. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) ("This Court should accept as true all factual allegations contained in the federal claims asserted in [Plaintiff's] Complaint. If those allegations are sufficient to support a finding of liability as to each defendant . . . the Court should enter judgment."). Federal Rule of Civil Procedure 9(b), in addition, provides a heightened pleading standard for claims of fraud which appears to be the predicate acts Plaintiff relies on for its RICO claim. "In alleging fraud . . . , a party must state with particularity the [factual] circumstances constituting [the] fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* As explained by the Sixth Circuit in *Frank v. Dana Corp.* 547 F.3d 564 (6th Cir. 2008), claims of fraud must meet the following requirements: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 569 (citation omitted). At a minimum, a claimant must allege "the time, place and contents" of the alleged fraud. *Id.*

The Complaint alleges that Jones purchased at least some of the vehicles at issue from Wholesale Defendants. ECF No. 1-2 at PageID.9, 12–14. Defendant Thornton is also alleged to be the registered agent for Great Homes Real Estate, Inc., the company that allegedly provided a fraudulent paystub for Borrower Defendant Coleman. ECF No. 1-2 at PageID.11. The Complaint

further alleges that "Defendants Laron Thornton, Xclusive Auto Group, LLC and Vernell Phipps a/k/a/ Vernell Jones intentionally made false representations of material fact regarding the condition of the vehicles that Plaintiff ultimately financed for Defendants Anderson, Coleman, Ingram, Fitzgerald, and Walker . . . [they knew the] representations were false when they made them . . . [and they] intended that Plaintiff rely on the representations." ECF No. 1-2 at PageID.22. Regarding the RICO claim, Plaintiff alleged,

> Defendants Anderson, Coleman, Ingram, Fitzgerald, and Walker provided false information, including false paystubs, to Plaintiff in support of their loan applications for these vehicles. Defendants Jones Pre-Owned Auto Sales, LLC, Vernell Phipps a/k/a Vernell Jones and Nichole Phipps submitted false information to Plaintiff regarding the condition of these vehicles, representing that the vehicles were functional and in good condition. Defendants Thornton, Xclusive Auto Group LLC, and Jones Pre-Owned Auto Sales, LLC purchased inoperable and/or severely damaged motor vehicles from auctions and then prepared title paperwork as if they were re-selling these vehicles in arms-length transactions to consumers. However, these transactions were shell transactions intended to defraud Plaintiff into providing financing for the sale of these vehicles.

ECF No. 1-2 at PageID.24–25. However, no factual information is alleged regarding what Wholesale Defendants misrepresented, who made the misrepresentation, or when. The allegations in the Complaint primarily focus on the conduct of Borrower and Retail Defendants but do not provide any factual allegations regarding Wholesale Defendants' participation. The only behavior alleged in the Complaint is that Wholesale Defendants sold non-operable vehicles to Retail Defendants. The factual allegations are insufficient to establish a predicate act for the RICO claim. Accordingly, Plaintiff's Motion for Summary Judgment for the fraud and RICO counts will be denied.

**ii.**

In addition to seeking compensatory damages, Plaintiff cites 18 U.S.C. § 1964(c) in support of its claim for treble damages from Wholesale Defendants. ECF No. 145-1 at PageID.601–02. The statute provides,

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains . . .

Once liability is determined, treble damages are mandatory. "Under RICO, treble damages are mandatorily assessed upon the finding of liability. 18 U.S.C. § 1964(c)." *Resol. Tr. Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1062–63 (C.D. Ill. 1994). "In fact, imposition of treble damages is required by RICO." *MDO Dev. Corp. v. Kelly*, 735 F. Supp. 591, 593 (S.D.N.Y. 1990). The mandatory application of treble damages applies even after entry of a default. *Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, 2018 WL 1884716, at *3 (E.D. Mich. Mar. 29, 2018), report and recommendation adopted, 2018 WL 1875628 (E.D. Mich. Apr. 19, 2018); *Gen. Ret. Sys. of City of Detroit v. Onyx Cap. Advisors, LLC*, 2014 WL 1270416, at *2 (E.D. Mich. Mar. 26, 2014). However, as earlier noted, Plaintiff has not advanced sufficient information to support its RICO claim against Wholesale Defendants. Correspondingly, no determination about treble damages can be made on the existing record.

**C.**

Third, Frankenmuth requests the entry of a judgment holding Defendant Jones jointly and severally liable for the amount of Borrower Defendants' unpaid loans and, in addition, treble damages. ECF No. 145 at PageID.602. Frankenmuth does not cite any legal authority to supports its request for joint and several liability between Jones and Borrower Defendants' in the motion.

Joint and several liability in tort actions, however, has been abrogated in Michigan.[2] Thus, Frankenmuth cannot recover joint and several damages against Jones on the tort claims.

**D.**

Fourth, Plaintiff also seeks to hold Defendants Phipps joint and severally liable for Borrower Defendants' unpaid loans. ECF No. 145-1 at PageID.602. Plaintiff's motion for summary judgment was granted against the Phipps but damages have never been determined. Plaintiff's only effort at justification for Phipps' potential liability is contained in its earlier supplemental brief addressing Phipps' damages. ECF No. 135. There, Plaintiff outlined the law on compensatory damages for contract and tort law and then argued,

> Retail Defendants are jointly and severally liable for the cost of the Borrower Defendant loans, to the extent those borrowers' unpaid loan balances are included in the actual damages incurred by the Plaintiff as a result of the fraudulent misrepresentations made by the Retail Defendants that gave rise to this lawsuit, the liability for which has already been established. Those unpaid loan balances are the direct and proximate result of Retailer Defendants' fraudulent misrepresentations, and, as each of the defaulted Consumer Defendants participated in the same scheme giving rise to the same damages, to the extent those damages overlap, we submit that the obligation of the Retail Defendants and the Consumer Defendants (as well as the Wholesale Defendants) should be joint and several.

ECF No. 135 at PageID.557–58. It is unclear why Plaintiff references contract law. The only claim Plaintiff made against Defendants Phipps was its claim for fraudulent misrepresentation, which is a tort.[3] *See Hord v. Env't Rsch. Inst. of Michigan*, 617 N.W.2d 543, 549 (Mich. 2000) ("A plaintiff's

---

[2] After the passage of tort reform legislation, Michigan law now provides that "in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint." MCL § 600.2956. Tort reform applies to all torts, not only torts where Plaintiff seeks damages for personal injury, property damage, or wrongful death. *Ferguson v. Pioneer State Mutual Insurance Company*, 731 N.W.2d 94, 99 (Mich. Ct. App. 2006); *Holton v. A+ Ins. Associates, Inc.*, 661 N.W.2d 248, 252 (Mich. Ct. App. 2003); *Jones v. Enertel, Inc.*, 656 N.W.2d 870, 872 (Mich. Ct. App. 2002).

[3] All other claims against Retail Defendants have been voluntarily dismissed. ECF No. 137.

subjective misunderstanding of information that is not objectively false or misleading cannot mean that a defendant has committed the *tort* of fraudulent misrepresentation.") (emphasis added).

As discussed previously, Michigan abolished joint and several liability in nearly all tort actions. Therefore, Defendants Vernell and Nicole Phipps are not joint and severally liable with Borrower Defendants for the unpaid loans. Because the only theory advanced was joint and several liability, no damages will be assessed against Defendants Phipps.

### III.

### A.

Plaintiff also seeks attorney fees and costs from all Defendants, relying solely on the RICO statute. ECF No. 145-1 at PageID.601–02. Plaintiff previously sought and was denied $53,000 in attorney fees and $4,748.74 in costs because no information was provided to support the request. ECF Nos. 96, 117. In the current Motion, Plaintiff does not offer any additional authority or evidence to support its request for attorney fees, except for a citation to 18 U.S.C. § 1964(c). ECF No. 145-1 at PageID.601. The Court has issued three show cause orders seeking an explanation for why the case has not been prosecuted with no explanation or substantiation. ECF Nos. 87, 101, 141. Plaintiff's second request for attorney fees will again be denied.

### B.

In the supplemental briefing, Plaintiff also argues that it is entitled to an award for attorney fees against Defendants Phipps based on the principle that attorney fees "may be awarded as exemplary damages" where "the court finds a party guilty of international wrongdoing, requiring a less culpable defendant to defend itself in a suit arising from the same action." ECF No. 135 at PageID.557. The principle has no apparent application to this case.

The two cases cited by Plaintiff do not save its argument. *Birou v. Thompson-Brown Co.* highlights an exception to the general rule against the recovery of attorney fees, where the court may award a plaintiff "reasonable attorneys' fees incurred in prior litigation with a third party--not with the defendant." 241 N.W.2d 265, 272 (Mich. Ct. App. 1976) (cleaned up). However, Plaintiff is not seeking reimbursement for legal fees incurred in prior litigation.

*Fagerberg v. Le Blanc*, also cited by Frankenmuth, stands for the proposition that a court may award attorney fees as a part of consequential damages if the fees "were actually and proximately caused by [the defendant's] misrepresentation [and] the[] damages are of a type which might reasonably have been anticipated by defendant." *Fagerberg v. Le Blanc*, 416 N.W.2d 438, 442. However, the attorney fees at issue in that case were expended to correct a title deficiency, not to prosecute the underlying complaint. *Id.* Plaintiff's second effort to secure legal fees is equally unsupported as a matter of fact and law.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Judgment, ECF No. 145, is **GRANTED IN PART AND DENIED IN PART**. Judgment against Borrower and Retail Defendants will be entered. Judgment will be denied as to Wholesale Defendants.

It is further **ORDERED** that Plaintiff's Motion for Summary Judgment against Wholesale Defendants (embedded in its Motion for Judgment), ECF No. 145, is **DENIED**.

It is further **ORDERED** that Plaintiff's request for attorney fees and costs is **DENIED WITH PREJUDICE**.

Dated: June 3, 2021                           s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge